**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MADELINE RICE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **GRIMM BROTHERS REALTY** | : | **NO. 15-1405** |
| **COMPANY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM

**Tucker, C.J.**                                                             **January 21, 2016**

Presently before the Court is Defendant Gary Grimm's ("Defendant Grimm") Motion to

Dismiss Plaintiff Madeline Rice's ("Plaintiff") Complaint (Doc. 2).  Upon consideration of the

parties' submissions and for the reasons set forth below, this Court GRANTS the Defendant's

Motion.

## I.      FACTUAL BACKGROUND

Plaintiff brings the instant civil action for damages against Defendant Grimm alleging

numerous violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), the

Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), and Pennsylvania tort law.

In December 2012, Plaintiff entered into a lease agreement with Defendant Grimm

Brothers Realty Company ("Defendant GBRC") to rent an apartment in Norristown,

Pennsylvania (the "Lease Agreement").  Compl. ¶ 16.  Defendant Grimm, an officer and

principal of Defendant GBRC, executed the Lease Agreement on behalf of Defendant GBRC.

Compl., Exh. A, Doc. 1, at 24.  The term of the Lease Agreement began on December 15, 2012

and terminated on April 15, 2014.  Compl. ¶ 17.  On or about January 1, 2013, Plaintiff entered into possession of the apartment.  *Id.* ¶ 19.

On or about May 15, 2013, Plaintiff notified Defendant GBRC in writing that she would vacate the premises by July 1, 2013.  *Id.* ¶ 21.  On or about May 29, 2013, Plaintiff vacated the premises.  *Id.* ¶ 22.  Plaintiff alleges that she vacated the premises prior to the completion of the lease term,

> due in substantial part to [Defendant] Grimm's unauthorized entry into the Premises (while the Plaintiff still resided there, but at a time when the Plaintiff was not present) for purposes unknown, but unrelated to the landlord/tenant relationship, and other actions of [Defendant] Grimm that invaded the Plaintiff's privacy, constituted harassment of the Plaintiff, and that caused her to be in fear of [Defendant] Grimm.

*Id.* ¶ 24.

Plaintiff alleges that on May 29, 2013, Defendant GRBC knew that Plaintiff no longer resided at the apartment, "[n]evertheless, [Defendant] GRBC, through [Defendant John J. Muholland Jr. ("Defendant Muholland")], its counsel at the time, filed a Landlord/Tenant Complaint against the Plaintiff in Magisterial District Justice Court 38-1-09, on May 29, 2013."  *Id.* ¶ 26.  Plaintiff contends that Defendants GBRC and Muholland had the Landlord/Tenant Complaint served only at the apartment despite knowing that Plaintiff no longer resided on the premises.  *Id.* ¶ 27.  Plaintiff avers that Defendants GBRC and Muholland made no effort to determine Plaintiff's current address so that the Landlord/Tenant Complaint may be served to her, thus denying Plaintiff the opportunity to respond.  *Id.* ¶ 28.  Plaintiff alleges that she did not respond to the Landlord/Tenant Complaint because she did not receive a copy of the Complaint and did not know a suit was pending.  *Id.* ¶ 29.  On June 11, 2013, the Magisterial District Justice Court entered a default judgment against Plaintiff "for possession of the Premises (which the Plaintiff no longer occupied) and for rent and other charges allegedly due under the lease of

2

$10,135.16, plus costs of $190.25, based on an underlying Lease [Agreement] that called for monthly rent of just $590.00" ("Magisterial Court Judgment").  *Id.*

Plaintiff alleges that Defendant GRBC did not take any action to collect the debt until February 19, 2015. *Id.* ¶ 30.  On that date, Defendant GBRC, through Defendant Seth C. Daniels ("Defendant Daniels"), docketed a transcript of the Magisterial Court Judgment in the Montgomery County Court of Common Pleas, No. 2015-03187 ("Common Pleas Judgment") and issued a Writ of Execution against T.D. Bank, N.A., as garnishee.  *Id.*   Plaintiff alleges that neither Defendant GBRC nor Defendant Daniels attempted to learn Plaintiff's current address at the time the Common Pleas Judgment was docketed. *Id.* ¶ 33.  On February 20, 2015, the Writ of Execution was served on T.D. Bank, N.A.  *Id.* ¶ 34.  In response, T.D. Bank, N.A. froze "approximately $13,000.00 on deposit in account that was titled jointly to the Plaintiff and to Maryann King and Matthew B. Rice, V.M.D., her parents." *Id.*   On February 26, 2015, Plaintiff first learned of the Common Pleas Judgment when she received a notice from T.D. Bank, N.A. that the joint account was frozen.  *Id.* ¶ 35.

In Count I of the Complaint, Plaintiff alleges that Defendants Muholland, Grimm, and GRBC violated the FDCPA and FCEUA.  In particular, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10), 1692f(1), and 1692g in regards to the Magisterial Court Judgment.  In Count II of the Complaint, Plaintiff alleges that Defendants Daniels, Grimm, and GRBC violated the FDCPA and FCEUA.  Specifically, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692e(2)(A), 1692f(1), and 1692g in regards to the Common Pleas Judgment and Writ of Execution.  In Counts III through VII, Plaintiff alleges that Defendants Grimm and GRBC invaded Plaintiff's privacy, committed a trespass, committed an assault, intentionally inflicted emotional distress, and negligently inflicted emotional distress, respectively.

## II.     STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  This is to ensure that "[a]ll parties [are] given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  Some portions of Defendant Grimm's motion to dismiss allege facts that were not present in the Complaint.  Accordingly, the Court will treat Defendant Grimm's 12(b)(6) motion to dismiss as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56, courts shall grant summary judgment in favor of the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'"  *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute as to a material fact is "genuine" if it is "one that 'may reasonably be resolved in favor of either party.'"  *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250)).

The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).  If the movant can sustain its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a *genuine issue for trial.*'"  *Id.*  (alteration in original) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  When

assessing the motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party." *Id.*

Furthermore, the court is mindful of its "obligation to liberally construe a *pro se* litigant's pleadings." *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Accordingly, as a threshold matter, in order for the FDCPA to apply in an action, a plaintiff must not only prove that he or she is a "consumer" but also that the defendant is a "debt collector."  See *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)) (explaining that "[t]he FDCPA's provisions generally apply only to 'debt collectors.'").  Therefore, the Court must first determine whether Defendant Grimm is a "debt collector" and thus subject to the FDCPA.

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  In contrast, a "creditor" is "any person who offers or extends credit creating a debt or *to whom a debt is owed*, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4) (emphasis added).  Additionally, "any officer or employee of a creditor while, in the name of the creditor,

5

collect[s] debts for such creditor" is not considered a "debt collector" for FDCPA purposes.  *Id.* § 1692a(6)(A).

Accordingly, "[c]reditors . . . generally are not subject to the FDCPA."  *Pollice*, 225 F.3d at 403; *see also Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) (reasoning that "[c]reditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the Act. . . . [b]ecause creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill"); *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) (explaining that the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. . . . [rather] [i]t is directed to those persons who are engaged in business for the principal purpose of collecting debts."). There is, however, an exception and a creditor may be considered a "debt collector" if "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  Thus, while the FDCPA "does not prohibit a creditor from indicating that a debt collector is attempting to collect a debt on behalf of the creditor. . . . the [Act does] forbid[] a creditor from attempting to collect its own debt by falsely representing that the debt is being collected by another entity."  *Brignola v. Home Props., L.P.*, No. 10-3884, 2013 WL 1795336, at *6 (E.D. Pa. Apr. 26, 2013).

In *Shipp v. Donaher*, the plaintiffs brought a claim against eight defendants, including PNC Bank, N.A. and PNC Bank N.A.'s Chief Executive Officer, James Rohr.  No. 09-2475, 2010 WL 1257972, at *1 (E.D. Pa. Mar. 25, 2010).  Plaintiffs brought numerous claims against all defendants, including for FDCPA violations.  *Id.*  The district court reasoned that a FDCPA claim may not be asserted against Defendant PNC Bank, N.A. because it was a "'[c]reditor[] who collect[ed] [the debt] in [its] own name and whose principal business [was] not debt

collection.  *Id.* at *9 (quoting *Aubert*, 137 F.3d at 978).  The court also dismissed the claim

against Defendant James Rohr.  *Id.*  Judge Pollak reasoned that because "Rohr . . . is an officer of

PNC, and there are no allegations in the complaint to suggest that he attempted to collect any

debts for any other institution or for PNC under a different name. . . . [that] [t]he claim is thus

also precluded as to Rohr."  *Id.*

      In the present case, Plaintiff admitted that Defendant GRBC is a "creditor."  Compl. ¶ 43.

Further, notably absent from Plaintiff's complaint is an allegation that Defendant Grimm is a

"debt collector."  Defendant Grimm is similar to PNC Bank N.A.'s CEO, James Rohr, in *Shipp*.

As an officer of Defendant GRBC, a creditor, Defendant Grimm is specifically excluded from

being deemed a "debt collector."  *See* 15 U.S.C. § 1692a(6).  Defendant Grimm executed the

Lease Agreement as "GBR, Gary R. Grimm, Officer," which supports this Court's finding that

Defendant Grimm is an officer.  Moreover, there is nothing in Plaintiff's Complaint to suggest

that Defendant Grimm "attempted to collect any debts for any other institution or for [GBRC]

under a different name."  *Shipp*, 2010 WL 1257972, at *9.  Accordingly, this Court finds that

Defendant Grimm is not a "debt collector" and therefore the FDCPA is inapplicable.  Therefore,

there is no issue of genuine material fact.

      The Court need not discuss whether Defendant Grimm's conduct also violated the

FCEUA because that the FCEUA excludes from the definition of "debt collector" "[a]ny officer

or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."

73 P.S. § 2270.3.  As explained above, Defendant Grimm satisfies this exclusion from the

definition of a "debt collector" and as such is not liable under the FCEUA.

**IV.    CONCLUSION**

For the reasons explained herein, the Court concludes that Defendant Grimm sufficiently demonstrated that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Accordingly, the Complaint as to Defendant Grimm will be dismissed.  The remaining state law claims are also dismissed for lack of subject matter jurisdiction.  An appropriate order follows.